UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Gregory S. Olson,   File No. 21-cv-2713 (ECT/BRT)

    Plaintiff,

v.   **OPINION AND ORDER**

PowerBlock, Inc., and PowerBlock
Holdings, Inc.,

    Defendants.

---

Paul J. Robbennolt, Erin O. Dungan, and Devan V. Padmanabhan, Padmanabhan & Dawson PLLC, Minneapolis, MN, for Plaintiff Gregory S. Olson.

Elisabeth Muirhead and Thomas J. Leach, III, Merchant & Gould, Minneapolis, MN, for Defendants PowerBlock, Inc., and PowerBlock Holdings, Inc.

---

Plaintiff Gregory Olson alleges in this case that Defendants monopolized or attempted to monopolize the market for "pin-selectable adjustable dumbbells" in violation of the Sherman Act, 15 U.S.C. § 2, when they sued him in a separate sham Minnesota state-court case. Olson and Defendants have filed competing motions. Olson seeks to preliminarily enjoin Defendants' prosecution of the state-court case. Defendants, on the other hand, seek dismissal of this suit under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, a stay of this case pending resolution of the Minnesota state-court case. Defendants' motion to dismiss will be granted because Olson has failed to allege facts in his Amended Complaint plausibly showing that the state-court case is objectively baseless, an element made essential to his Sherman Act claim by the *Noerr-Pennington* doctrine.

I[1]

Defendants—who will be referred to collectively as "PowerBlock"—design and sell weightlifting and fitness equipment, including adjustable dumbbells. Am. Compl. [ECF No. 23] ¶ 2. Olson was a co-founder and co-owner of PowerBlock and served as its Vice-President for 20 years, until he left the company in 2013 due to interpersonal conflicts with other company managers. *Id*. ¶¶ 2, 16, 18.

On October 1, 2015, PowerBlock and Olson entered into a "Stock Redemption Agreement," under which PowerBlock purchased and redeemed all of Olson's PowerBlock shares. *Id*. ¶¶ 3, 19–20; Agreement [ECF No. 32-2] at 1, 3. The Stock Redemption Agreement includes two provisions central to this case. The first is a non-compete covenant providing as follows:

> 7.1 **Gregory S. Olson agrees that he will not, for a period of six years** from the date of this Agreement, **compete with Purchasers, directly or indirectly, as an owner, shareholder, director, officer, partner or employee of any**

---

[1] In describing the relevant facts and resolving Defendants' Rule 12(b)(6) motion, all factual allegations in the Amended Complaint are accepted as true, and all reasonable inferences are drawn in Olson's favor. *Meardon v. Register*, 994 F.3d 927, 934 (8th Cir. 2021). Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment, but not when the relevant materials are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). Here, the Amended Complaint includes allegations concerning the existence and content of numerous pre-suit emails between the Parties. Though these emails are not copied verbatim in or attached to the Amended Complaint, they are included in the Parties' submissions, and no Party questions their authenticity. It is therefore appropriate to consider these emails in adjudicating Defendants' Rule 12(b)(6) motion.

> **business engaged in the business of manufacturing or distributing strength training, similar to that being manufactured or distributed by Purchasers.** This non-competition agreement shall not extend to Seller engaging in or producing or selling: 1) Olympic-type barbells and associated Components (collars, weight plates, etc.) or 2) Design, manufacturing and sales of plyometric boxes.
>
> The parties acknowledge that this covenant forms an integral and important consideration for PBI agreeing to redeem the stock of the Seller. In addition to any other remedies available to it, in the event of violation of this covenant by the Seller, PBI may apply to a Minnesota Court of competent jurisdiction for injunctive relief to enforce this covenant.

Am. Compl. ¶ 21; Agreement ¶ 7.1 (emphasis added). The second provision required Olson to share new "strength training ideas" with PowerBlock and gave PowerBlock a right of first refusal to develop any shared idea. This provision reads as follows:

> 7.2  So long as any Purchaser is indebted to the Seller hereunder, **Seller will give all strength training ideas to Purchasers in writing with a right of first refusal for a 90-day timeframe**. Purchasers can then determine whether or not they will want to proceed with any such idea or project. Should such notice be given, Purchasers shall, within a further ninety days, deliver to Seller details of Purchasers' plan to develop and produce the relevant products, including a timetable for manufacture of the products. However, if Purchasers do not commit in writing to begin development of the idea or project, then Seller can proceed to further develop the idea or projects as the case may be. With regard to the barbell business that Seller now is involved with, Seller agrees that during the term of the Covenant Not to Compete that he will not consent to or facilitate the assignment or sale of said business to any third party, but instead shall use his best efforts to offer it to Purchasers on the same terms and conditions as offered to any third-party purchaser.

Am. Compl. ¶ 22; Agreement ¶ 7.2 (emphasis added). In addition to the stock redemption/purchase, PowerBlock agreed to employ Olson as a consultant and to pay him

3

a $30,000 annual salary during the non-compete covenant's term. Am. Compl. ¶ 23; Agreement ¶ 7.3.

The relevant litigation-provoking facts arise from a series of emails exchanged by the Parties beginning March 1, 2021.[2] That day, Olson emailed PowerBlock co-founder Carl Towley and Chief Executive Officer Mattson Towley with a strength-training idea. Olson wrote: "I have a fitness product idea for a new product line and am wondering who at PowerBlock I would talk to this about? I am trying to be upfront and see if PB has interest in pursuing this under the terms of my non compete." Am. Compl. ¶ 24; ECF No. 40-2 at 3. Mattson responded the same day, writing: "Thanks for reaching out, I'm the guy to talk to. Is there a drawing or something you could share to advance the conversation?" Am. Compl. ¶ 24; ECF No. 40-2 at 2. Olson replied: "I would prefer to show you the concept/sketches without sending drawings on the internet. Is their [sic] a time we can meet or Skype/Voom [sic], etc. I am around this week, but out the next 2 weeks." *Id*. Mattson and Olson agreed to meet in person on Friday, March 5. Am. Compl. ¶ 24; *see* ECF No. 39-1 at 3–4.

Early the next morning (March 2), Olson emailed a "sketch of the product concept" to Mattson. In an accompanying email, Olson explained: "It is pretty simple and has a wide range of options and sizings. Please let me know if this is of interest and we can discuss possible next steps." Am. Compl. ¶ 25; ECF No. 39-1 at 2–3. Olson's email did

---

[2] The emails deserve extensive quotation given the central role they play in prompting the Parties' dispute and as evidence bolstering the Parties' claims and arguments.

not include a description of, and his sketch did not depict, the "range of options and sizings" to which Olson referred.

On March 3, 2021, Olson emailed Mattson: "I am just following up on this email and also to see if you still want to try and meet this Friday in Owatonna? I am going to be out of the state for 2 weeks starting this weekend." ECF No. 40-4 at 4. Later that day, Mattson responded:

> Thanks for following up. We're moving this week to the new Burnsville location so it would be great push [sic] the meeting out until you get back. Lets [sic] meet a couple days after you get back.
>
> Regarding the design, thank you for sharing what's on your mind, I have a few thoughts percolating so it will be a good chance to digest once we're done moving.

Am. Compl. ¶ 27; ECF No. 40-4 at 3.

More than 90 days passed before Olson and Mattson communicated again. On June 11, 2021, Mattson emailed Olson:

> I was waiting for you to reach out on your return but assume you got busy. I've been hearing through the grape vine that you have a new Adjustable Dumbbell, however I'm told it's not the one you shared with me. Is there a chance I could see this prototype when we meet?

Am. Compl. ¶ 29; ECF No. 40-4 at 3; *see also* ECF No. 39 ¶ 13. On June 14, 2021, Olson responded:

> The idea I shared with you is the same concept. Nothing has changed and the patent covers may versions, sizes and shapes. We are going to continue to develop this concept on our own. The 90 day window in my agreement has since past and we assumed no one had interest based on any lack of response or reply.

5

Am. Compl. ¶ 29; ECF No. 40-4 at 2–3.  That evening, Mattson replied to Olson:

> From what I've been told it's different from what you shared with me, if you could share the differences or similarities we could resolve this quickly.  **If it's what you originally shared it's derivative of something Carl developed in the past, he's finding the prototype from the barn next week.  And if that's the case I don't have any interest and you're good to carry on.  The variants are not necessarily part of the initial concept you presented to me which I would be interested to follow up with proof.**

Am. Compl. ¶ 30; ECF No. 40-4 at 2 (emphasis added).

To summarize, by this point these email exchanges show that Olson and PowerBlock held different views regarding Olson's compliance with § 7.2's idea-sharing requirement.  Olson seems to have believed that his March 2 disclosure of the sketch satisfied his idea-sharing obligation and that other "variants" of the design were not materially different (meaning Olson thought his March 2 sketch disclosure effectively disclosed all related concepts of the design).  Olson also evidently believed that the passage of more than 90 days since PowerBlock received his March 2 email and first sketch meant that PowerBlock had waived or forfeited its right to develop and produce the product.  PowerBlock saw things differently.  It pretty clearly believed that Olson had a design or designs that were "not the one" Olson had shared in his March 1 email, ECF No. 40-4 at 3, that § 7.2 obligated Olson to share the other design variations with PowerBlock, and that until he did, PowerBlock's 90-day window to "commit in writing to begin development of the idea or project" would not begin to run.

On June 15, 2021, Olson emailed Mattson, sharing images of "other variations" of the design first shared on March 2, and persisting with the view that PowerBlock had given up any right of first refusal to develop or produce the design or its variations. Olson wrote:

> I have attached a few images of some of the other variations using other shapes of materials all covered on the same patent. The image you saw is the flat plate version and the others attached are one in hex and the other in round. Other material variations are also possible. Please keep these confidential.
>
> I think the 1st right of refusal is now a mute [sic] point as we are going to pursue these on our own some time late this year or year 2022. If PowerBlock still wants to make an offer for these products/designs we are open even though the initial 90 day window for a reply has passed, but our intention is to not lisc [sic] these even though we have had some offers to do so.
>
> The concept of stacking the weight vertically, one on top of the other is what sets this apart from other adj db's as they typically add plates outward rather than vertically.

Am Compl. ¶¶ 32–33; ECF No. 40-6 at 3; *see also* ECF No. 39-2 at 3–4.

On July 9, 2021, Mattson responded to Olson:

> Thanks for sending over the designs for the "hex" and "round" plate dumbbells. I appreciate it. These designs are different than the flat plate dumbbell design initially disclosed in the drawing you previously sent on March 2, 2021. Can you please provide all drawings, images of prototypes, patent applications, and/or other documentation for "all strength training ideas" since October 1, 2015, including the "other material variations" of the dumbbells you referend [sic] in your email? I believe the agreement provides us the opportunity to evaluate *all* "strength training ideas" pursuant to Section 7.2 of the Covenant Not to Compete in the Stock Redemption Agreement. Also, you mentioned having some offers to license such designs in your e-mail of June 15, 2021, can you provide a little more detail about which designs were discussed, with who, and when.

7

Am. Compl. ¶ 34; ECF No. 40-6 at 2–3 (emphasis in original).

On July 14, 2021, Olson responded to Mattson:

> I have received your email and I don't think I know what additional information I could give you that you do not already have.  As far as I know, I have previously sent you (PowerBlock) all my ideas since entering the agreement with PowerBlock.  I also reached out to my attorneys to make certain I was not missing anything and they indicated that it would be unwise for me to show anyone, including you, any patent applications.  That being said, what you have seen is a very simple idea and shows what is in the patent applications.
>
> While you have exhausted your 90 day window, I would still possibly entertain a license agreement for this idea.  Please know though that I do not have much interest in licensing to anyone at this time as and [sic] am still developing it so I don't know what direction I should go with it.  If you are interested in working with this project I am always open to hearing your thoughts on an agreement so feel free to let me know what you're thinking including proposed royalties and minimums or a possible buyout.

Am. Compl. ¶ 35; ECF No. 40-6 at 2.

On July 28, 2021, Mattson communicated PowerBlock's position in a lengthy email response to Olson, ECF No. 40-7 at 3–5.  The email stated, in relevant part:

> To the extent that you maintain that notice was provided on March 1, 2021 with respect to the hexagonal and round plate designs, we note that this notice was for a different strength training idea.  Under Section 7, you have an obligation to disclose **_"all strength training ideas,"_** not just a single potential design amongst many different designs.  Your March 2, 2021 email merely indicated that the strength training idea "has a wide range of options and sizings," and did not mention or even illude [sic] to alternative plate shapes—possibly an important distinguishing feature.  Moreover, after further investigation, the flat plate design that you initially provided drawings of in your March 2, 2021 email is identical to a product designed and prototyped by Carl [Townley] in 2003—

8

> a design that is owned by PowerBlock, and which you would have known about. The potential that any confidential PowerBlock designs are in a patent application filed by you and may become public is concerning to PowerBlock. For this separate reason, we need to see these patent applications, including any that disclose the flat plate design.

Am. Compl. ¶¶ 36–37; ECF No. 40-7 at 4 (emphasis in original).

Olson responded on August 2 with an email explaining his understanding of § 7.2 as it applied to the situation. Am. Compl. ¶ 38; ECF No. 40-7 at 2–3. Olson reiterated his belief that the hex and round variations were not different ideas from what he shared with PowerBlock on March 2, that he therefore had fulfilled his idea-sharing obligations to PowerBlock, and that his June disclosure of the hex and round versions did not re-start the 90-day window for PowerBlock to make an offer pursuant to § 7.2. *Id*.

Litigation ensued, beginning in Minnesota state court. On September 28, 2021, PowerBlock sued Olson in Minnesota District Court, Steele County, asserting claims for breach of contract, tortious interference with prospective economic advantage, misappropriation of trade secrets, and civil theft under Minn. Stat. § 604.14. Am. Compl. ¶¶ 39–40. Olson moved to dismiss the tortious interference and civil theft claims on the ground that they were preempted by the Minnesota Uniform Trade Secrets Act. *Id*. ¶ 43. And PowerBlock filed an Amended Complaint removing those two claims. *Id*.

Olson filed this case on December 21, 2021, essentially challenging the legality of PowerBlock's state court suit. In his original Complaint, Olson asserted claims for monopolization and attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2, and Minnesota common-law claims for tortious interference with prospective business

9

advantage and malicious prosecution. ECF No. 1. PowerBlock moved to dismiss or stay this case, ECF No. 14, and Olson filed an Amended Complaint withdrawing the malicious prosecution claim. ECF No. 23. PowerBlock and Olson then filed their pending motions—PowerBlock's renewed motion to dismiss or stay, ECF No. 29, and Olson's motion for a preliminary injunction, ECF No. 35—on March 21, 2022.

II

It makes sense to start—and, as it turns out, end—with PowerBlock's motion to dismiss. In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Sherman Act makes it unlawful to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold

the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." *Id*. § 15(a).

To state a monopolization claim under Section 2 of the Sherman Act, a plaintiff must allege facts plausibly showing that the defendant "(1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining that power as a result 'of a superior product, business acumen, or historical accident.'" *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (quoting *United States v. Grinnell*, 384 U.S. 563, 571 (1966)); *Moldex Metric, Inc. v. 3M Co.*, Civ. No. 14-1821 (JNE/FLN), 2015 WL 520722, at *6 (D. Minn. Feb. 9, 2015).  And to state an attempted monopolization claim under the Act, a plaintiff must allege facts plausibly showing: "(1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success." *HDC Med, Inc. v. Minntech Corp.*, 474 F.3d 543, 549 (8th Cir. 2007) (citation omitted); *Moldex*, 2015 WL 520722, at *6.  To recover under § 15, a plaintiff "must prove an 'injury of the type that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

There is an additional element when a § 2 plaintiff seeks to show monopolization or attempted monopolization through sham litigation.  "Those who petition government for redress are generally immune from antitrust liability." *Prof'l Real Est. Invs., Inc. v.*

11

*Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*PREI*"); *see United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669 (1965); *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) ("We crafted the *Noerr-Pennington* doctrine—and carved out only a narrow exception for 'sham' litigation—to avoid chilling the exercise of the First Amendment right to petition the government for the redress of grievances."). Under the *Noerr-Pennington* doctrine, "the act of filing a lawsuit is immune from antitrust or tort liability unless it is found to be a mere sham intended to disguise tortious or anticompetitive liability." *Polaris Indus. Inc. v. Arctic Cat Inc.*, Civ. No. 15-4475 (JRT/FLN), 2017 WL 1180426, at *5 (D. Minn. Mar. 29, 2017). This doctrine "extends immunity unless the litigation constitutes [a] 'mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'" *Id.* at *5 (quoting *Noerr Motor Freight, Inc.*, 365 U.S. at 144). The sham exception applies when (1) the underlying lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) "the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" *PREI*, 508 U.S. at 60–61 (quoting *Noerr Motor Freight, Inc.*, 365 U.S. at 144). As the Supreme Court explained in *PREI*:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's

12

> subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor" through the "use [of] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." This two-tiered process requires the plaintiff to disprove the challenged lawsuit's legal viability before the court will entertain evidence of the suit's economic viability. Of course, even a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating both the objective and the subjective components of a sham must still prove a substantive antitrust violation. Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim.

508 U.S. at 60–61 (cleaned up). The burden is on "the plaintiff to disprove the challenged lawsuit's legal viability." *Id.* at 61; *see also Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213, 221 (3d Cir. 2020); *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1187 (9th Cir. 2017); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992).

Here, then, Olson must begin by alleging facts plausibly showing that PowerBlock's state-court suit is objectively baseless. PowerBlock asserts three claims in that suit: (1) a claim that Olson breached § 7.1 of the Agreement; (2) a claim that Olson breached § 7.2; and (3) a claim that Olson violated the Minnesota Uniform Trade Secrets Act, Minn. Stat § 325C.01, *et seq. See* ECF No. 32-1. Olson must allege facts plausibly showing that all three claims are objectively baseless. In other words, if any one claim has objective merit, PowerBlock's state-court case cannot be considered a sham. *Dentsply Int'l Inc. v. New Tech. Co.*, Civ.A. No. 96-272 MMS, 1996 WL 756766, at *2 (D. Del. Dec. 19, 1996) ("[C]ourts have indicated that litigation will not be considered a 'sham' so long as at least

13

one claim in the lawsuit has objective merit."); *PREI*, 508 U.S. at 60 (recognizing that the entire "law*suit* must be objectively basis" (emphasis added)).

Olson has not met this burden in his Amended Complaint, and it is difficult to imagine how he might. Consider first PowerBlock's claims that Olson breached ¶¶ 7.1 and 7.2 of the Stock Redemption Agreement. These are breach-of-contract claims. Under Minnesota law, the elements of a breach-of-contract claim are: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Olson mounts no discernable challenge with respect to the first two elements, so the dispositive question boils down to whether Olson alleges facts in his Amended Complaint plausibly showing the objective baselessness of PowerBlock's claims of breach.

Olson's Amended Complaint here does not plausibly show that the breach allegations in PowerBlock's state-court complaint are objectively baseless, and materials embraced by Olson's Amended Complaint may reasonably be construed to support PowerBlock's state-court allegations. Consider ¶ 7.2 first. It obligated Olson to "give all strength training ideas to [PowerBlock] in writing with a right of first refusal for a 90-day timeframe." Agreement ¶ 7.2. In its state-court complaint, PowerBlock alleges Olson breached these requirements by failing to disclose the variations of his March 2 sketch, ECF No. 32-1 ¶¶ 39–40, 70–73, and by refusing to give PowerBlock the 90-day window to exercise its right of first refusal, *id.* ¶ 46. Mattson and Olson's email exchanges lend plausible support to these allegations. These emails plausibly show that Olson initially

14

refused to share information regarding design variations, ECF No. 40-4 at 2–3, that there are differences between the design Olson shared on March 2 and these variations, ECF Nos. 39-2 at 3–4 and 40-6 at 3, and that Olson took the position that PowerBlock could no longer exercise its right of first refusal, ECF No. 40-6 at 2–3. These allegations and materials plausibly show that Olson violated ¶ 7.2. The Parties seem to agree that ¶ 7.2 should be understood as a carve-out from the non-compete provisions of ¶ 7.1. If that is so, then PowerBlock's plausible allegations that Olson violated ¶ 7.2 mean that PowerBlock's allegations that Olson violated ¶ 7.1 "by taking affirmative steps to compete with PowerBlock" also are plausible. ECF No. 32-1 ¶ 63; *see also id.* ¶¶ 41, 53–56.

Olson's argument regarding PowerBlock's contract claims is not persuasive. Olson begins by noting that his Amended Complaint here includes allegations that his "disclosure satisfied [his contractual] obligations with respect to all variations on the concept" Olson first disclosed on March 2, 2021, and that "PowerBlock did not exercise its right of first refusal or provide notice of intent to develop Olson's invention within 90 days," leaving Olson free to develop the invention. Pl.'s Mem. in Opp'n [ECF No. 50] at 13. Olson then argues: "Accepted as true, as they must be, these factual allegations establish that PowerBlock's breach of contract claims are objectively baseless in that no reasonable litigant could realistically expect success on the merits." *Id.* This argument reflects a misunderstanding of Olson's Sherman Act § 2 pleading burden. Olson doesn't plausibly show that PowerBlock's state-court suit is objectively baseless merely by identifying his opposing factual and legal position in that case. Accepting the truth of these allegations just shows that Olson has a different take on the facts and their contractual consequences.

15

In other words, that Olson has a seemingly plausible defense to, and may prevail against, PowerBlock's state-court case doesn't plausibly show that PowerBlock could not realistically expect to succeed on the merits of its claims in that case. If Olson's allegations were enough, then every similarly situated defendant could allege a plausible § 2 claim merely by alleging the substance of its opposition to the assertedly sham suit. Sanctions motions provide a useful comparison. A litigant doesn't, for example, ordinarily show that a claim is frivolous in violation of Rule 11 merely by describing a contrary factual or legal position. It might be different if Olson's Amended Complaint—or his opposition to PowerBlock's state-court suit—included some allegation or facet that, accepted as true, showed the presence of an insurmountable hurdle facing PowerBlock's state-court complaint. But we don't have anything like that here. Olson's Sherman Act claim will be dismissed.[3] [4]

The dismissal of Olson's Sherman Act claim means Olson's tortious interference claim must also be dismissed. The Eighth Circuit has regularly observed that, "when a

---

[3]  Olson's failure to allege facts plausibly showing the objective baselessness of PowerBlock's breach-of-contract claims makes it unnecessary to determine whether Olson has plausibly shown the objective baselessness of PowerBlock's trade-secrets claim under Minn. Stat. § 325C.01, *et seq*. *PREI*, 508 U.S. at 60. This disposition also means Olson's motion for a preliminary injunction must be denied as moot. *See Heights Apartments, LLC v. Walz*, 510 F.Supp.3d 789, 815–16 (D. Minn. 2020).

[4]  Olson amended his Complaint once as a matter of right before the current motion was filed. He chose to stand by his Amended Complaint in its present form. He did not seek Defendant's agreement to amend a second time, and he did not request permission in the alternative to amend his Complaint should Defendant's motion be granted. For these reasons, Olson's Section 2 claim will be dismissed with prejudice. *See Mell v. Minn. State Ag. Soc'y*, 557 F. Supp. 3d 902, 924 (D. Minn. 2021).

district court has dismissed every federal claim, . . . judicial economy, convenience, fairness, and comity will usually point toward declining to exercise jurisdiction over the remaining state-law claims." *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (internal quotation marks and citation omitted); *see* 28 U.S.C. § 1367; *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016); *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008). There is not diversity jurisdiction because all of the parties are Minnesota residents. Am. Compl. ¶¶ 9–11. Thus, Olson's remaining state-law claim for tortious interference with prospective business advantage lacks an independent basis for federal jurisdiction and will be dismissed without prejudice to Olson's right to re-file it in state court.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. PowerBlock's motion to dismiss [ECF No. 29] is **GRANTED IN PART.** Olson's claim for sham litigation monopolization and attempted monopolization in violation of the Sherman Antitrust Act, 15 U.S.C. § 2 (Count I) is **DISMISSED WITH PREJUDICE.** Olson's claim for tortious interference with business advantage (Count II) is **DISMISSED WITHOUT PREJUDICE.** PowerBlock's alternative motion to stay is **DENIED AS MOOT**.

      2.      Olson's motion for preliminary injunction [ECF No. 35] is **DENIED AS MOOT.**

      3.      PowerBlock's motion to dismiss [ECF No. 14] is **DENIED AS MOOT.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 23, 2022

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court